Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 1504 | DATE | November 24, 2004 |
| CASE TITLE | TANNER vs. JUPITER REALTY CORP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted as to plaintiff's retaliatory discharge claim. The defendant's counterclaim is dismissed without prejudice.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 29 2004 date docketed | 28 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11-24-04 date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

J. RICHARD TANNER,            )
                              )
        Plaintiff,             )
                              )
    v.                         )   No. 04 C 1504
                              )
JUPITER REALTY CORPORATION,    )
                              )
        Defendant.             )

DOCKETED
NOV 29 2004

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff J. Richard Tanner, ("Tanner"), invoking this court's diversity jurisdiction, 28 U.S.C. § 1332, filed his second amended complaint of April 23, 2004, (Dkt. No. 10), alleging one count of the Illinois common law tort of retaliatory discharge against defendant Jupiter Realty Corporation, ("Jupiter"). Jupiter answered and filed a counterclaim against Tanner on June 30, 2004 alleging one count of defamation, (Dkt. No. 17). On November 1, 2004, Jupiter moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, ("Rules"), on Tanner's second amended complaint. (Dkt. No. 22.) For the reasons set forth herein, that motion is granted.

Tanner alleges that Jupiter unlawfully fired him because he was a "whistle blower" who brought corporate malfeasance to management's attention. Jupiter counters that Tanner was let go as part of an unrelated business reorganization. In support of its motion for summary judgment, Jupiter urges the court to apply Georgia law because that law does not recognize a cause of action for retaliatory discharge. Jupiter also argues that even if this court applies Illinois law, this court should still grant summary judgment for Jupiter. Tanner argues for the application of Illinois law and that there are genuine issues of material fact at dispute precluding summary judgment.



## BACKGROUND

Jupiter is an Illinois corporation headquartered in Chicago, Illinois. (Jupiter's Statement of Facts at ¶ 2.) Jupiter is in the commercial real estate business operating in 43 states and internationally. (Id. at ¶ 3.) Tanner is a resident of Norcross, Georgia. (Id. at ¶ 1.) Tanner was hired in March, 2002 as a Senior Asset Manager in Jupiter's Atlanta, Georgia office. (Id. at ¶ 5.) Tanner's offer of employment was made through a letter written by Mr. Keven Moyer, ("Moyer"), VP Asset Manager in the Atlanta office. (Tanner Ex. 1 to App. A to Statement of Material Facts.) The offer letter was written on Jupiter letterhead listing only Jupiter's Atlanta, Georgia address. (Id.) Tanner's primary responsibility was to manage Jupiter's real estate holdings in South Carolina. (Jupiter's Statement of Facts at ¶ 7.) In addition to Moyer and Tanner, Jupiter employed one other full-time asset manager, Karen Meinzen, ("Meinzen"), and one part-time employee in the Atlanta office during 2003. (Id. at 22.)

Sometime in December 2002 or January 2003, Jupiter's management in Chicago began considering whether to close Jupiter's offices in Atlanta and Denver. (Id. at ¶ 17.) Jupiter eventually decided to close the Atlanta and Denver offices and consolidated their functions into the Chicago office. (Id. at ¶ 19-20.) Moyer advised Tanner on various occasions during April and May 2003 that Jupiter was considering closing the Atlanta office but the parties dispute whether Jupiter ever offered to relocate Tanner to Chicago. (Id. at ¶ 23; Pls' Resp. to Jupiter's Statement of Facts ¶ 23.) During a meeting on May 27, 2003, Moyer informed Tanner and Meinzen that Jupiter would be closing the Atlanta office on July 25, 2003. (Jupiter's Statement of Facts at ¶ 24.) Moyer also informed Meinzen that she would be able to continue manage her Jupiter properties for from home until the assets were sold while Tanner's properties would be managed by another Jupiter employee. (Id. at

2

¶ 25, 26.) Moyer also informed Tanner that Tanner would no longer be employed by Jupiter once the Atlanta office closed on July 25, 2003. (Id. at ¶ 28.) Tanner began searching for a new job in early June 2003. (Id. at ¶ 29.)

Jupiter decided to sell two properties, 3875 Faber Place and 3955 Faber Place, ("Faber Place"), in June 2003. (Id. at ¶ 31.) Tanner believes that Jupiter is required to account for the Faber Place sale proceeds in a certain manner as required under the Loan Agreement between Jupiter and Jupiter's Lender, G.E. Capital. (Tanner's Statement of Facts at ¶ 43.) According to Tanner, Jupiter is required to pay 100% of the sale proceeds less Jupiter's income tax liability for a gain on the sale of the property. (Id.) Tanner believes that Jupiter has not calculated the proper payment to G.E. Capital. Specifically, Tanner alleges that Jupiter overestimated its tax liability from the Faber Place sale and this allows Jupiter to improperly withhold a larger amount of the sale proceeds from G.E. Capital. (Id. at 46.) Tanner has also alleged other improper actions by Jupiter including a similar overestimation of a tax liability on the sale of another property, (Id. at 52), excess management fees charged by Jupiter to G.E. Capital, and Jupiter's withholding of information relating to environment and health concerns from mold in one of Jupiter's properties. (Id. at 66.)

Tanner first informed Meinzen of his concerns about the accounting and reporting of the Faber Place transactions through an e-mail sent June 3, 2003 (Id. at 13.) Tanner then sent an e-mail to Moyer on June 13, 2003 expressing concern about the Faber Place transactions. Moyer and Tanner then discussed Tanner's concerns on June 25, 2003 as they traveled to Greenville, South Carolina for a meeting. (Jupiter Statement of Facts at ¶ 45, 48, 49.) In light of Moyer and Tanner's discussion on June 25, 2003, Jupiter decided to bar Tanner from the Atlanta office and pay him through the closing of the Atlanta office on July 25, 2003. (Id. at ¶ 59, 60.)

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. Stinnett v. Iron Works Gym/Exercise Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

As a federal court presiding in Illinois, this court applies Illinois choice of law rules in diversity cases. Fredrick v. Simmons Airlines, 144 F.3d 500, 503 (7th Cir. 1998) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). "Illinois choice of law ... presumes that 'the local law of the State where the injury occurred should determine the rights and liabilities of the

4

parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case the law of Illinois should apply.'" Johnson v. Ford Motor Co., Inc., No. 01 C 8882, 2004 WL 407022, at *2 (N.D. Ill. Jan. 30, 2004) (quoting Ingersoll v. Klein, 262 N.E.2d 593, 595 (Ill. 1970)). The court examines (1) where the injury occurred; (2) where the injury causing conduct occurred; (3) the domicile of the parties; and, (4) where the relationships of the parties is centered, Cummings v. Club Mediterranee, S.A., No. 01 C 6455, 2003 WL 22462625, at *1 (N.D. Ill. Oct. 29, 2003) (citing Ingersoll, 262 N.E.2d at 593)), to determine which state has a more significant relationship. When determining which state has a more significant relationship, the court does not merely count contacts in the abstract, but instead must evaluate a state's contacts in light of the state's "interests and public policies ... as they relate to the transaction in issue." Fredrick, 144 F.3d at 504 (quoting Jones v. State Farm Mut. Auto. Ins. Co., 682 N.E.2d 238, 249 (Ill. 1997)).

"In Illinois, the tort of retaliatory discharge occurs when an employee is discharged in retaliation for his activities, and the discharge is violates a clear mandate of public policy." Fredrick, 144 F.3d at 504 (citing Meister v. Georgia-Pacific Corp., 43 F.3d 1154, 1160 (7th Cir. 1995); Hartlein v. Illinois Power Co., 601 N.E.2d 720, 728 (Ill. 1992)). "By recognizing a claim for retaliatory discharge when the employment relationship is centered in Illinois, the Illinois courts have expressed their concern about those who are discharged for attempting to enforce a public policy." French v. Beatrice Foods, Co., 854 F.3d 964, 967 (7th Cir. 1988).

However, "Illinois law does not override, as morally superior, the laws of another state. Where another state has more significant contacts with an employment relationship, Illinois courts would apply the law of that state which governs that relationship." Id. Georgia courts have decided to show deference to their legislature when rejecting attempts to create a common law tort for

5

retaliatory discharge. Employment relationships in Georgia are governed by statute, with the current status of employment relationship to be an "at-will" arrangement. See Ga. Code Ann. § 34-7-1. Georgia courts "have consistently held that they will not usurp the legislative function and, under the rubric that they are the propounders of 'public policy,' undertake to create exceptions to the legal proposition that there can be no recovery in tort for the alleged 'wrongful' termination of the employment of an at-will employee." Robins Fed. Credit Union v. Brand, 507 S.E.2d 185, 187 (Ga. Ct. App. 1998).

After review the contacts that each state has to the parties and occurrences, in light of the policy that each state promulgates through its law, this court holds that it must apply Georgia law. Georgia is the place of injury. Tanner alleges that he was injured by losing his Atlanta, Georgia job. The injury causing conduct occurred when he was informed of his termination and was prevented from coming back to the office. The parties state that Tanner was informed of his termination sometime during the car ride back from South Carolina to Georgia. The parties do not pin down the exactly location. However, neither party says that Tanner was informed of his termination in Illinois. In fact, Tanner's termination date was July 25, 2003 when the Atlanta, Georgia office closed.

Furthermore, Tanner's employment relationship with Jupiter is a Georgia employment relationship and consequently the dispute is centered in Georgia. Tanner was employed in Georgia. The 2002 letter offering Tanner employment, came from Moyer, a Jupiter employee located in Atlanta, Georgia, on letterhead listing only Jupiter's Atlanta, Georgia office. Tanner worked out of Jupiter's Atlanta, Georgia office. He managed property in South Carolina, a state neighboring Georgia. Tanner's work did require him to engage in some communication with individuals in Illinois, as well as to travel to Illinois on occasion, but these contacts with Illinois are not enough to

say that the relationship is centered in Illinois.

Tanner alleges that the key contacts are to Illinois because the alleged wrong doing of Jupiter's misreporting the transaction to G.E. Capital and Jupiter's deciding to terminate Tanner occurred at Jupiter's Illinois headquarters. Tanner also points to the various communications that he had with individuals in Jupiter's Chicago office throughout his employment to show his Illinois contacts. Illinois may have a public policy interest of deterring corporate mismanagement in this case. However, Georgia also has a competing interest of allowing its legislature to determine the scope of its "at-will" employment doctrine. Consequently, this court cannot say as a matter of law that Illinois has a more significant interest that must supercede Georgia's interest.

Tanner's contacts are with Georgia. Tanner is a Georgia citizen, based out of his company's Georgia office, informed that he was barred from the Atlanta, Georgia office in either South Carolina or Georgia, alleging malfeasance over the reporting of sale of property sold in South Carolina by a company located in 43 states with its headquarters in Chicago. To apply Illinois law, this court must disregard Tanner's contacts with Georgia and instead only consider Illinois' policy. This is inappropriate under Illinois choice of law because the place of Tanner's alleged injury is in Georgia, and Illinois' policy interest is not strong enough to require the court to disregard Georgia's interest.

Thus, this court concludes that it must, under Illinois' choice of law doctrine, apply Georgia law in this case. Consequently, Tanner is unable to sustain a cause of action for retaliatory discharge. Summary judgment must be granted in favor of Jupiter.

This court also concludes that even if this court applied Illinois law, this court would still be required to grant summary judgment for Jupiter. Both parties agree that Jupiter informed Tanner

7

of the decision to close the Atlanta office and terminate Tanner on July 25, 2003 during a May 2003 meeting between Tanner and Moyer. Tanner did not become aware nor did he communicate his concerns about allegedly misreporting to G.E. Capital by Jupiter until June 2003. Thus Jupiter's decision in May 2003 to terminate Tanner when the Atlanta office was closed July 25, 2003 was made before Tanner ever informed Jupiter of his concerns about the wrongdoing. Consequently, Tanner would be unable to show that Jupiter retaliated against him because Jupiter's decision to terminate Tanner occurred before, rather than in response to, Tanner's June 2003 communication of his concerns to Jupiter's management. Additionally, although Tanner was barred from Jupiter's Atlanta office on June 25, 2003, he still was paid until his original termination date of July 25, 2003.

## CONCLUSION

For the reasons set forth above, this court grants Jupiter's motion for summary judgment on Tanner's retaliatory discharge claim. The only remaining issue is Jupiter's counterclaim against Tanner for defamation. The court declines to exercise supplemental jurisdiction over the counterclaim at this time. The court dismisses Jupiter's counterclaim without prejudice. Jupiter may refile the counterclaim in the form of a new complaint in this or another court if Jupiter so chooses. Tanner's complaint of retaliatory discharge is dismissed with prejudice. Case dismissed. Any pending motions are moot.

ENTER:

_James F. Holderman_
JAMES F. HOLDERMAN
United States District Judge

DATE: November 24, 2004